### COATS v. UNITED STATES.

District Court, W. D. South Carolina.
Nov. 21, 1933.

O. L. Long, of Laurens, S. C., and Mays & Featherstone, of Greenwood, S. C., for plaintiff.

C. C. Wyche, U. S. Atty., and O. H. Doyle, Asst. U. S. Atty., both of Greenville, S. C., and D. H. Rosier, Atty., Department of Justice, of Columbia, S. C.

WATKINS, District Judge.

This matter comes before me upon defendant's motion to dismiss the complaint, on the ground that the jurisdictional prerequisite of a disagreement, contemplated by section 19 of the World War Veterans' Act, as amended July 3, 1930 (38 USCA § 445), does not exist. The case was argued before me at the October, 1933, term of court, at Greenville, S. C., and a decision deferred, awaiting the filing of briefs by counsel for both sides. At the conclusion of the oral argument, I made certain remarks, a transcript of which is filed herewith in order to save repetition in this opinion. At the hear-

ing I had not had an opportunity to read over the record containing the stipulation of facts, and it was my desire to study this record more carefully, particularly as it related to the correspondence and records of 1921. An examination of the applications made to the Bureau and of the forms executed by the plaintiff will show that these could not be reasonably construed as a demand for the award of insurance benefits under a rating of permanent and total disability. There is an absence of any claim at the time, upon the part of the soldier, that he was permanently and totally disabled from the date from which such disability might have begun. It is true that it is stated that disability began as of February 24, 1919, but the answer to the question as to the nature and extent of disability is left blank. It must be remembered that the forms used were forms requiring certain information as to insurance, even when the application was limited to compensation awards. It is true that the Bureau, upon the application made, stated that the plaintiff was awarded a permanent and total rating of disability, but the award itself shows that the word "permanent" was used in error, because the extent of such award as to time was limited to December 16, 1921. Such temporary award clearly shows that it was intended only to apply to a limited period, instead of being permanent, and, since there has been no unequivocal application for the award of the insurance for permanent and total disability, the extent of the award cannot go beyond what was applied for, and, in no event, could it be regarded as a basis of disagreement. Later on, the Bureau explains that the award itself was granted in error, and that it was not intended to apply to insurance, but merely to compensation. We find, therefore, that, while there was considerable correspondence, it was rather by way of inquiry and explanation than by way of demand and refusal, until the correspondence beginning in 1931. On March 18, 1931, Coats wrote to the Bureau, asking for certain information regarding his insurance. This information was given in a letter of the Bureau, dated April 1, 1931, and thereafter, beginning with the month of May, certain specific demands were made for insurance benefits. These demands, we think, were sufficiently definite and certain to constitute a claim, but, before receiving any decision from the Bureau, this suit was filed, and we think prematurely filed for lack of disagreement.

For these reasons, the motion to dismiss must be granted, and the complaint must be dismissed, and it is so ordered.

Remarks at Conclusion of Oral Argument.

█ I am not quite satisfied about this case, and I am going to outline certain views that I now entertain, in order to aid you in such briefs as you may care to file for my further information. What is contemplated by the requirement that there shall be a disagreement, I think is, first of all, that there shall be a distinct and unequivocal demand for the payment of the insurance upon the part of the claimant, and, in order to give jurisdiction, that there shall be an unequivocal denial of liability on the part of the Bureau. The application, which has been presented here on Form 526, bearing date the 24th of June, I think it is, or maybe July—either June or July, 1919—appears to have been a form which the Bureau used for applications for such benefits as a soldier felt that he was entitled to, either by way of compensation or insurance. At the same time, if it contained only an application for compensation, it could not be construed as an application for insurance. Now, in order to furnish of itself a proper and adequate ground for claiming insurance, it must have contained such statements as would advise the Bureau that conditions exist which would entitle him to the payment of his insurance; and a careful reading of this application fails to disclose any facts which would justify the construction of an insurance claim, because it does not state that he is permanently disabled or that he is totally disabled. It states that he is making claim before the Department because he was sent to the hospital with cold or grippe. I do not find in here, in a rather hurried examination of it, that there is any claim that he became permanently or totally disabled because of that, or the date upon which he claims permanent or total disability, the only ground, of course, upon which he could claim any benefits under his policy. At the same time, it is evident from the correspondence which was had, sometimes with the soldier himself, sometimes with Senator Dial, sometimes with Congressman McSwain, that there was an intention to go further, and that the Bureau itself did go further. I do not think that the Bureau had any very definitely defined method of having these claims made, and the correspondence indicates that the ideas

of the Bureau were as indefinite as the methods which were pursued.

So that we come to the question of whether, anywhere, there was a definite claim upon the part of this soldier; whether there were facts which entitled him to insurance. I may say that I do not think it would be sufficient for the soldier to write in, in a general way, and say, "I demand my insurance." If he did, they said, "You are not entitled to it, because your policy has lapsed"; and then he wanted to see if there were other grounds upon which he could claim it. Evidently there was a discussion between the soldier, as I said, either through his direct communications or through communications had through the representatives in Congress, with reference to insurance, and it is further evident that the Bureau considered the question of insurance. Now I am not quite satisfied, and could not be without a very careful study and analysis of that correspondence, as to the extent to which they recognized the claim of the insurance or the extent to which he demanded it. They did tell him that he was awarded insurance upon the claim which he made, from May, I believe it was, of 1919, until December of 1921. They said, "We have made these payments and we made them because we rated you totally disabled during that time, and mistakenly we have treated that as entitling you to insurance." I think it is quite evident that they felt that, if he was totally disabled, he was entitled to insurance as long as that condition existed, but they said, "When that condition is removed, you are no longer entitled to it." The question is whether he ever said to them, "I am permanently and totally disabled." You could easily conceive that both sides were laboring under the same mistake. I do not say that that was true here, but I say that it is easily conceivable that both the insured and the Bureau entertained the opinion that, if he was totally disabled, he was entitled to his insurance as long as that condition existed and if he was basing his claim upon that. So that we have got to look to all this correspondence to see whether he merely based his claim upon that or merely said to the Bureau, "I am making claim to the insurance to which I am entitled because of the conditions of the policy, and because I am permanently, as well as totally, disabled, and have been since I came out of the service or while the policy was still in force by payment of premiums." I am very anxious to decide it correctly. I am of opinion that, if there was a distinct demand on the part of the claimant, and a distinct refusal of the insurance, that was a disagreement, and, in this case, I think that the correspondence with Colonel Forbes, the Director himself, shows that the action was taken by the proper authority, and that whatever was done, was done by the Director or through his duly authorized representatives, and that the act of 1930 would not be a bar to the jurisdiction of this court, if it had previously attached, if there was a disagreement. That is about all I can say this morning with intelligence, but I would appreciate it if counsel would analyze the records so that I can decide it right.